Good morning, Sharon Healy for Petitioner Kel Halim. The first issue that I'd like to address is the judge's adverse credibility finding in this matter. This is not a Real ID Act case, and therefore, when an immigration judge makes an adverse credibility determination, this determination must be supported by cogent reasons that support it, and it must go to the heart of the petitioner's claim. In this particular case, the evidence… Is that correct under the new law? Yes, for pre-Real ID. If the case was filed before the Real ID Act, then it still goes by the pre-Real ID Act standards. This case was. And so therefore, it's a pre-Real ID Act, and therefore, in order to support an adverse credibility finding, the immigration judge has to provide specific reasons to support his determination. He must state what those discrepancies are. He must give petitioner a reasonable opportunity to explain any perceived inconsistencies, and any inconsistencies must go to the heart of the petitioner's claim. In this case, what the immigration judge cited in support of his adverse credibility finding was the opinion testimony, not even of the petitioner, but of the petitioner's mother, and nothing but opinion testimony. Well, the IJ did point to that both of them testified that the Army came to disperse the mobs that were attacking him, and it's used that as a reason for disbelief, I think goes to the heart of his claim that he contended that the 1998 incident constituted persecution, that the government was coming in to save him, and they both testified to that. Well, first of all, Mr. Halim isn't contending persecution on the part of the government, but on the part of organizations that the government is unable or unwilling to protect. And with regard to the control, I mean control, and with regard to the persecution, it was the mother who testified that she didn't think the, and it wasn't even the Army she was referring to, she said she didn't think the police would be able to protect them. And then as the basis of his adverse credibility finding, the immigration judge said that, well, the Army was able to come in and disperse the mob, but obviously the Army didn't protect him. He'd already been beaten by the time the Army got there. So to make an adverse credibility finding of Halim based on the statement of his, based on the opinion statement of his mother that they couldn't be protected by police just does not meet the standards that are required under the Real ID Act for an adverse credibility finding. First of all, it doesn't go to the heart of his claim, and he certainly wasn't given any opportunity. This was his mother's testimony. He wasn't given any opportunity that the judge was going to, finding an adverse credibility. There was no opportunity for him to explain any supposed inconsistencies. So as a pre-Real ID Act, the adverse credibility finding simply cannot stand. What about the past persecution? The past persecution, the immigration judge ruled that what happened to Mr. Halim did not amount to past persecution. But certainly what happened to Mr. Halim does amount to past persecution. Well, persecution, we've determined that persecution is an extreme concept. So why was the IJ, why are we compelled to conclude that the IJ erred in determining that there was not past persecution? Well, first of all, I think that persecution is an extreme concept. But if you look at other courts, the Ninth Circuit, for example, in Costeva v. Gonzalez found past persecution, where in that case petitioner and her daughter were attacked in the street, a close family friend was murdered, sexually harassed, denied promotion. Is there evidence like that in this case? Yes, yes. Halim testified, Mr. Halim testified that he was forced to strip naked, which certainly is way beyond mere harassment. He was forced to strip naked. He was denied medical treatment. It was in junior high, right? It was in junior high. But there is no, the fact is that he was forced to strip naked by his native classmates. He was denied medical treatment. He was beaten. How many times was he beaten? He was beaten on, let me just, he was attacked twice. Beaten once when he was younger, also, and this is different than the stripping incident. Then he was also beaten at the time during the riots, which is discussed in his testimony. He was denied medical treatment, and a close friend was murdered. And so when you compare that to what happened in Christova, where the court found that there was persecution, certainly he has persecution. What do you do with the IJ's finding that a determination of persecution was negated by the fact that he was able to continue his university education and start a successful career? Well, first of all, I think you're, if you find, that's not a question of whether or not he was subjected to persecution. If he's subjected to persecution and there is a finding of persecution, then he has a rebuttable presumption of future persecution, and that may be evidence to rebut it. But it doesn't negate a finding of persecution. He still gets, he has persecution, and he gets his rebuttable presumption. And with regard. If someone is subjected to, I mean, persecution, isn't, I mean, isn't part of that the fact that he or she can't go about his life freely, that there. Well, persecution, I mean. You're talking, you're saying that there were two finite instances of persecution, and it didn't continue past that period? No, not necessarily. What I'm saying is there were a number of instances, and if you look at Singh versus Gonzalez, you can, even if you can't take, even if taken alone, a couple of those instances may not have risen to the level of persecution. When you look at them cumulatively, they do rise to the level of persecution. And if you look at past persecution, the cases cited by this Court in the Wakerley decision, very similar to what happened to Mr. Halim, where persecution was found. In this case, there were numerous instances. Taken cumulatively, they amount to persecution. Taken individually, some of them on their own amount to persecution. You talked about two beatings. No, I actually mentioned the two beatings. The denial of medical treatment, the stripping, which alone, I mean, the stripping of a teenager, the public stripping of a teenager, certainly. That was a long time ago, though, wasn't it? When it happened is irrelevant. When that happened, the issue isn't when it happened, it's whether it rises to persecution. Now, once you make a finding of persecution. What case authority supports your argument that when the persecution happened is irrelevant? There, if you look at, well, if you look at the cases in. Give me your strongest case to support your argument that when, the timing of the persecution is irrelevant. Your Honor, I think the issue. Do you have a case? I don't. I don't have a case at this moment. I may look for rebuttal, but I think the issue is once he has established persecution, then the issue of whether he has, because once he has established a persecution, he has a rebuttable presumption of future persecution and the timing. That's the question, counsel, though. The question is, do you establish persecution when the incidents have taken place a long time ago? That's the question. You establish persecution by the incidents themselves. It's not when they occurred, it's what happened. That's why I asked you for the case that says that. I think I'll address that, and by the way, I have a chance to look at the cases. I'm thinking about that. What is your response to the I.J.'s finding that the petitioner did not establish that any persecution was on protected ground? The I.J. found that it wasn't on a protected ground. He seemed to make the finding that it was just a matter of, you know, that this happened in the context of ethnic strife. This fellow had not been a member of a disfavored group, and the Chinese Christians in Indonesia are a special case, as we all know. Would this amount to persecution, these particularized incidents? Yes. Would that amount to persecution? Yes. If he didn't have the background of being in a heavily disfavored group? Yes, it did. All of these things would amount to persecution because, cumulatively, they were done because of his protected category. They were done because of his ethnicity. Now, whether or not he's a protected group, it was still a member of a protected group, these incidents were still committed because of his ethnicity. The government seems to say, oh, it wasn't that. But you still, I guess the government's also contending on that you're raising, for the first time, about him being in a disfavored group, that that wasn't part of your argument previously, and they're saying that. . . The disfavored group argument for the Ninth Circuit came out in 2004, and Mr. Halim's appeal was in 2003, so I don't know how that could have even been established. What in the, you know, I guess in looking at that, let's just assume for argument's sake that, and I'm not speaking out of any authority, I'm going to ask you to assume this, that this panel, if this panel were to conclude that the adverse credibility finding was supported by substantial evidence and you lose on that, how does that affect any claim that he's part of a disfavored group because the court didn't, you know, didn't believe him? Well, I think you have to look at what the adverse credibility finding was too. The adverse credibility finding, you know, was very limited. The adverse credibility finding was limited to, you know, as the judge states, to the issue of whether or not he would be able to somehow get help by the Army, but it doesn't go to anything beyond that. Mr. Halim's, the judge did not make an adverse credibility finding with regard to finding that the numerous instances of persecution and harassment, which I have argued cumulatively derived from the level of persecution, were untrue, nor did he cite anything, any inconsistencies in his. Did the judge think that Mr. Halim exaggerated? Were those words used? The judge thought that he exaggerated with regard to one point, and that was the ability of the Army to, or police to assist, the Army to assist him. He made no findings with regard to any adverse credibility with regard to the numerous incidents that Mr. Halim testified to. You're saying that we have to cabin the adverse credibility, and so everything else has to, he has to be presumed to be credible? Yes, because under. Does it say that in I.J.'s decision? Does it say, I'm sorry. That the adverse credibility is cabined in the way that you're arguing? Yes, he says, he does say that. He says that he finds that they embellished their testimony, or that particularly he referred to the mother's testimony with regard to this one issue, and that was the basis for his adverse credibility, and it certainly does not meet the Real ID Act, the pre-Real ID Act requirements for an adverse credibility under Desta v. Ashcroft. Do you want to save any time for rebuttal? I have one minute. I'd like to save it for rebuttal. Thank you. May it please the Court, Anna Nelson for Respondent Attorney General. Halim first presented his case to an asylum officer who found that he did not establish persecution to qualify for eligibility for asylum, and therefore referred the case to the immigration judge who made the adverse credibility finding and also found also that he hadn't established past persecution and hadn't established well-founded fear of future persecution. The record in this case does not compel reversal of any of those determinations. Well, what about the argument in terms of, I know that you're saying that counsel can't make the argument about being in a disfavored group, but pointed out that, I don't know, sort of what I would call to be like the trilogy of cases, Sale, Lalong, and Wackery or Wakari or however we pronounce those, would be subsequent to when this case was being argued. If this Court were to affirm the IJ in all the ways that you're talking about, what would be your position about whether there should be a remand to the Board of Immigrations for a fuller development of whether Haleem had a well-founded fear of persecution based on membership of a disfavored group? And how does the adverse credibility finding dovetail into that? Sure. And as you noted, it wasn't brought up before the Board in this case. But could they have brought it up if those cases didn't exist? And we had a substitute briefing on Lalong after it came out, and still, even in the opening brief, it was a very cursory just saying it's a disfavored group, therefore there's well-founded fear here. And it hasn't really been developed. This was before the Board prior to these cases, was it not? Sale and Lalong and so forth. Sale came out in 2004, I believe. And there has been disfavored group analysis before this. It didn't start with Sale, but Sale, I believe, was the first one who applied it to the Chinese Christians in Indonesia. Okay. Tunnel it in terms of if you won on everything else, why shouldn't it be remanded for development of that? Right. What's your position on that? And in Lalong, in particular, focuses on the requirement for individualized risk to an individual, and it really isn't here in this record. No one is contesting that there's a lot of civil violence and suffering by the Chinese Christians. If there was a disfavored group that you had looked at the particularized acts in a little different light, you didn't have to prove as much as you might have otherwise. Now, is that something the Board ought to look at? I don't think that the Board needs to in this case. The record, there's just not enough, based on these other cases that you pointed out, individualized evidence. Really, the requirement is if the record compels the conclusion that Mr. Halim is any different than the millions of other Chinese Christians who deal with harassment and discrimination every day in Indonesia, and this record shows and the agency found that he has experienced harassment, he's experienced discrimination. However, it hasn't risen to the level and the record doesn't compel the conclusion that it's risen to a level that it's so, that he's received such specific... Shouldn't the Board make that determination? Are you acquainted with Ventura, a Supreme Court case which said that these issues ought to be sent to the Board, and we shouldn't try to decide them? And that seems to be the problem here, is that we've got this recent law which changes or at least establishes the relationship here between disfavored groups and the particularized persecution, and that's kind of... Shouldn't the Board look at this case in that context? I think if this Court really wants to address it, the Board would be the proper venue to look at it in the first place, but I also think based on the cases presented and the record presented and just asylum law in general and other case law precedent, the record doesn't compel reversal in this case. Well, what's the threshold? I mean, what standard do we use in determining whether or not to remand to the Board to decide? Does there have to be a certain level of evidence in the record that would warrant a remand? I mean, what criteria do we use to decide whether it's appropriate to remand or whether or not we can decide there's no need to remand? How do we make that determination? I'm not sure how to articulate a standard or if there is a standard, and I would just argue... Ventura is the default. What was that? Ventura is the default. Right. You're not making a very strong argument here. And I just believe on this record the Court can make this decision and find that it doesn't apply. It hasn't been argued in the brief. Look, I can make a stronger argument than you can, but I have to decide, but why should I, if the government isn't giving me a very good reason? But what do you make of the fact that if the adverse credibility is supported, how does that affect the body of evidence that we're looking at right here? I mean, is the petitioner then entitled to still have all the inferences in favor of the developed record, or does the adverse credibility take away from that or whatever? And the adverse credibility finding, as you found, is supported by the record, and it specifically... I didn't find that yet. Well, actually, appellate courts don't make findings. Right. If you affirm the agency's decision... That's what I tell my law clerks all the time. Appellate courts don't make findings. Right. If you affirm the decision or that finding by the agency, then to the... I mean, that part of it especially would not be credible, that the government is targeting or wouldn't step in to... Well, is the adverse credibility cabined in the way that the petitioner or the appellant's petitioner's counsel is arguing? Is that... Are you... Is she correctly stating the adverse credibility, or do you have a different take on it? It is a pre-real ID case. I know that. And it does go to heart of the claim, the judge's determination, and he did articulate that it was this, that the record was this assertion. Well, I know, but petitioner's counsel is saying that the adverse credibility only applies to saying that the government came in and helped you during... You know, I don't believe you when you said that the government didn't do anything in that riot. I don't believe your mother, and I don't believe you in that situation. And what petitioner's counsel is arguing is that everything else is presumed to be credible. Is that true or not true? Or does the adverse credibility, do its tentacles go out broader than that? And the judge also referred to it being an exaggerated testimony and, yes, to answer your question. Yes, ma'am. And that the tentacles do go out, that it extends further, and that he went on to stay in the university, had a career, which undercut his, how he was traumatized. However, even to the extent that it doesn't go far enough, I think the agency's determination on the past persecution that there was none and that there isn't a well-founded fear of future persecution, I think that that's just as solid, even if the court does not affirm the adverse credibility finding. Counsel, are you from the Office of Immigration Litigation? I am. And how long have you been there? A year. And so if the court, or because there was no past persecution, there's also no rebuttable well-founded fear of persecution. And I think we noted as well, the record really undercuts that there is any well-founded fear. He stayed for two years. He even testified that there was another riot in 2000, which wasn't as bad. He wasn't harmed at all. His brother still lives in Indonesia. And this court has found in other decisions that this really undercuts a finding of well-founded fear of future persecution. My opponent said that's irrelevant to determination of past persecution. I presume it's maybe relevant to the prospect of future persecution. But what's your response to that? It is relevant to well-founded fear of future persecution. It's not relevant to past persecution? It does also go to past persecution. When she's arguing that we look at all of the instances cumulatively, also part of this totality of the evidence includes all of these times when he has been fine, unharmed. And he switched schools. He had problems in one school, didn't have problems in other schools, and remained there. His church also has gone unscathed, which also goes against the totality of the circumstances. If you have no future questions, the main thing is that he needs to show that the record compels reversal, that he's more singled out and targeted than one of the other millions of Chinese Christians, and that he'd be persecuted in the future. And the record just doesn't compel the reversal of the agency's decision. And we request that the court deny the petition for review. All right. Thank you, counsel. Rebuttal? Yes, Your Honor. Quickly, with regard to the adverse credibility finding, the judge's sum total of his adverse credibility was that he noted that the respondent and especially the mother, when testifying, made sweeping statements that they couldn't get protection from the government or authorities, and yet the government did come in and disperse the mob, albeit after a respondent had been beaten. That, under the Real ID Act, simply cannot support an adverse credibility finding. With regard to the issue about it not being briefed, the first disfavored group case decided by the Ninth Circuit, not even the first Chinese case, was in 1994, which was after a respondent filed his brief. Counsel made some sort of reference to the first brief that was filed. 1994. I mean, I'm sorry, 2004. And counsel made reference to the first brief that was filed in this case as being cursory, but that's irrelevant because when I became counsel, I asked and was granted permission to file the substitute brief, and I did. Someone had to bring up the disfavored group analysis before it became a part of our jurisprudence. So it was part of the jurisprudence before the Long and Sayul's line of cases came out. It was. It first became part of your jurisprudence in 2004. Well, never mind. You've exceeded your time. Okay. Thank you to both counsel. The case is argued as a limit for a decision by the court.
judges: Cudahy , Rawlinson, Callahan